IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DOYLE JAY KELLY,

    Petitioner,

vs.

                                          CASE NO. 4:04cv495-RH/WCS

JAMES CROSBY,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Doyle Jay Kelly pursuant to 28 U.S.C. § 2254. Doc. 1 (petitioner) and doc. 7 (memorandum). Petitioner challenges his conviction for aggravated battery in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 02-02514AF. Four grounds are presented.

Respondent filed an answer, doc. 12, and Petitioner filed a traverse, doc. 15. The record is the appendix attached to document 7 and exhibits attached to document 12. Respondent concedes that the petition was timely filed. Doc. 12, p. 6.

**Relevant Procedural History**

Petitioner was charged by information with attempted second degree murder. Doc. 1, App.1. Petitioner entered into a no contest plea to aggravated battery in exchange for a sentence of 48 months in prison followed by 60 months on probation. *Id.*, App. 5 (transcript), and 40-41 (plea agreement).

Petitioner filed a direct appeal, but subsequently dismissed that appeal voluntarily. Doc. 12, Exs. B-F.

Petitioner filed a FLA. R. CRIM. PROC. 3.850 motion. *Id.*, Ex. G, R. 1-20. The trial court denied relief in a written order. *Id.*, R. 68-71 (with attachments). The ruling was affirmed on appeal. *Id.*, Exs. J, M.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this court's review is limited. As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent

that they demonstrate how those courts applied Supreme Court precedent. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden to establish the deficient performance prong of Strickland, by showing that "no competent counsel would have taken the action that his counsel did take." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). There are no rigid requirements, or absolute duty to investigate a particular line of defense. *Id.*

A defendant who pleads guilty on the advice of counsel may only attack the voluntariness of his plea by showing that counsel was ineffective in the context of guilty plea. Hill v. Lockhart, 474 U.S. 52, 56-59, 106 S.Ct. 366, 369-370, 88 L.Ed.2d 203 (1985) (collecting cases). The two part Strickland test applies, but the prejudice prong is somewhat modified. 474 U.S. at 58-59, 106 S.Ct. at 370. The prejudice inquiry focuses on whether, absent counsel's deficient performance, defendant would not have entered a plea but would have insisted on going to trial. *Id.* This will often resemble the usual prejudice inquiry:

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial.

*Id.*, at 59, 106 S.Ct. at 371.

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams). "[T]he most important point is that an *unreasonable* application of federal law

is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

In ground one, Petitioner contends that there was no factual basis for his plea of nolo contendere to the charge of aggravated battery because there was no evidence of "great bodily harm" caused to the victim. Petitioner argues that this is an essential element of this offense. He contends that the lack of a factual basis for the plea denied him due process under the Fourteenth Amendment. Doc. 7, p. 5.

Respondent argues that ground one, standing alone, was not alleged in Petitioner's Rule 3.850 motion and was not otherwise litigated in the state court. Therefore, argues Respondent, the claim is procedurally defaulted. Respondent also argues that ground one fails to state a federal claim.

The second defense to ground one is dispositive and should be considered first.[1] "[T]he due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence." Wallace v. Turner, 695 F.2d 545, 648 (11th Cir.), *rehearing denied*, 706 F.2d 318 (11th Cir. 1983). A guilty plea uncoupled with a simultaneous claim of innocence does "not present the issue of voluntariness, the fundamental constitutional consideration when evaluating the validity of a plea . . . ." Wallace, 695 F.2d at 648. Wallace also noted that:

---

[1] This claim is distinguished from a challenge to counsel's effectiveness in the context of the guilty plea and the sufficiency of the evidence addressed ahead.

> States are free to adopt procedural rules requiring a factual basis as Florida has done in Rule 3.172(a).  The federal Constitution, however, does not mandate them to do so, and a violation of such state procedural rules does not of itself raise constitutional questions reviewable by federal habeas courts.

695 F.2d at 648 (citations omitted).

Petitioner has not asserted innocence.  His only contention is that his attack upon the victim did not constitute aggravated battery for purposes of the guilty plea.  Consequently, ground one fails to state a federal claim.

**Ground Two**

In ground two, Petitioner contends that his attorney was ineffective for stipulating to the factual basis of the plea and for failing to inform him that "great bodily harm" was a necessary element of the offense of aggravated battery.  He again argues that there was no evidence that he caused the victim "great bodily harm."  Respondent concedes exhaustion of state court remedies as to the ineffective assistance of counsel claim.[2]  Thus, the court should reach the merits of ground two.

The trial court found that the plea colloquy transcript "evidences a sufficient factual basis to support the Defendant's plea."  Doc. 12, Ex. G, R. 68.  The trial court also found that the "Plea and Acknowledgment of Rights form signed by the defendant contains a provision indicating that the defendant understands the nature of the charges [to] which he is pleading."  *Id.*, R. 69.  The court found that pursuant to FLA. RULES OF

---

[2] Petitioner's first claim in his Rule 3.850 motion was that his plea was involuntary because his attorney was ineffective because there was no factual basis for the plea and that this denied Petitioner due process of law.  The second claim was related, that counsel was ineffective for failing to explain to Petitioner that one of the elements of aggravated battery that had to be proved was that the victim suffered "great bodily injury."  Doc. 12, Ex. G, R. 1-4.

CRIM. P. § 3.172(c)(1), there is no requirement that each element be explained to the defendant. *Id.* The court, therefore, rejected Petitioner's ineffective assistance of counsel claim. *Id.*

FLA. STAT. § 784.045(1)(a) creates the offense of aggravated battery when, in the course of committing battery, a person "intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement." The factual predicate set forth in the plea colloquy is the following:

> Apparently on April 21st of 2002, the victim in this case had obtained an injunction of protection against domestic violence.
>
> The defendant in this case called her on June 28th and indicated that he was living in a tent in the woods and asked if he could stay the night at her home because it was raining.
>
> The victim told him that he could do that, but he would have to leave in the morning. She woke him up at 7:15 a.m., which would have been the morning of the charge that he's charged with, June 30th, and told him he needed to leave.
>
> \*                    \*                    \*
>
> The defendant came out and sat on the sofa and asked her if they would could [sic] work things out. She told him that that was not going to be possible unless he checked himself into a long-term detox center.
>
> At that time, the defendant started getting angry and the victim asked him again to leave. He refused and she picked up the phone to call 911. He took the telephone away from her. She ran outside, and he ran out behind her.
>
> She knew she wasn't going to be able to make it to her neighbor's house, so she jumped into the pickup truck and locked the doors. The defendant began yelling at her through the truck window for her to open the door.
>
> She started to blow the horn, trying to alert a neighbor to get their attention. This made the defendant angrier, and he grabbed a tire iron and broke out the driver's side window and opened the door.

> He then proceeded to grab her around the neck, pushing her down on the truck seat.  She tried to scream for help.  He struck her in the face and attempted to choke her.  And then she indicated that he said very calmly to her, you have to die now, so say hi to God.  And the victim then passed out.
>
> When she came to, the defendant was giving her mouth-to-mouth, and she realized she had urinated all over herself. . . .

Doc. 7, App., pp. 8-10.

There appears to be only one Florida case with arguably similar facts, Zellars v. State, 707 So. 2d 345 (Fla. 5th DCA 1998), *review denied*, 725 So. 2d 1105 (Fla. 1999).  In that case, the defendant choked the victim for two to three minutes.  *Id*., at 346.  She "was unable to push him off and could not yell out and scream because she could not breathe."  *Id*.  She suffered a bruised neck.  *Id*.  Unlike Petitioner here, the defendant in Zellars was charged with *attempted* aggravated battery, and the issue on appeal was whether this was enough evidence of intent to cause great bodily harm to go to the jury.  Judge Cobb, concurring, felt that there was insufficient evidence of aggravated battery because there was no evidence of actual great bodily harm.  707 So. 2d at 347.  Judge Harris, dissenting, noted that the State had conceded that there was no evidence of great bodily harm.  *Id*., at 348.  However, the two judge majority felt that this was enough evidence to go to the jury on the issue of intent to cause great bodily harm.  Dissenting Judge Harris noted that had the evidence shown that the defendant "intended to choke the victim until she died," then "we should be considering an attempted homicide charge instead of an attempted aggravated battery."  *Id*., at 349.

That, of course, is exactly what Petitioner initially faced.  He was initially charged with attempted second degree murder, a charge that was justified as he calmly told the

victim she was going to die and then he choked her into unconsciousness.[3] The aggravated battery charge was a plea bargain to a lesser offense and a lesser sentence. Furthermore, on the basis of the Zellars case, Petitioner could have been tried and convicted of attempted aggravated battery.

The ineffective counsel issue here is whether Petitioner would have insisted upon going to trial on the attempted second degree murder charge had he known that he had a reasonable argument that aggravated battery could not be proved because the victim did not, in fact, suffer great bodily harm. Petitioner has not made that showing.

The case at bar differs significantly from the Zellars case because here, there was evidence of intent to kill *and* the victim was so deprived of oxygen to her brain that she became unconscious and urinated on herself. It was not unreasonable for the trial court to find as a matter of state law that great bodily harm actually had been inflicted, in contrast to the findings in the Zellars case.

Second, Petitioner faced trial on attempted second degree murder, a more serious offense. There was sufficient evidence to prove attempted second degree murder. Petitioner faced a minimum sentence of 61.8 months for a conviction on attempted second degree murder, compared to the 48 months he received with this plea bargain. Doc. 12, p. 14, n. 4. Petitioner cannot complain of the lack of evidence on a lesser offense that he bargained for to avoid conviction on the greater offense. *Cf.*, State v. Espinosa, 686 So. 2d 1345, 1348 (Fla. 1996) ("we do not believe that a defendant who requests an instruction on a lesser-included offense should be allowed

---

[3] The sufficiency of the evidence is discussed in greater detail with respect to ground three.

Case No. 4:04cv495-RH/WCS

to complain on a sufficiency of the evidence claim on the lesser-included offense when sufficient evidence exists to convict the defendant for the greater offense.").

For these reasons, the state court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Ground Two affords no relief.

**Ground Three**

Petitioner contends that his attorney was ineffective for failing to investigate the defense of abandonment and to explain that defense to him. He argues that abandonment is a defense to the charge of attempted second degree murder. He asserts that had he known about this defense, he would have persisted in a not guilty plea to attempted second degree murder and gone to trial. Respondent concedes exhaustion of state court remedies as to this claim.

This claim was raised in claim three in the Rule 3.850 motion. Doc. 12, Ex. G, R. 5. The trial court did not address this claim in its ruling on the motion. *Id.*, R. 69.

Second degree murder in Florida is "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual . . . ." FLA. STAT. §782.04(2). "In order to attempt to commit a crime, there must be specific intent to commit a particular crime and an overt act toward its commission. . . . To constitute an overt act, the act must go beyond mere preparation." Wiggins v. State, 816 So. 2d 745, 747 (Fla. 4th DCA 2002). It is a defense to an attempt to commit an offense where the defendant "abandoned his or her

attempt to commit the offense or otherwise prevented its commission." FLA. STAT. § 777.04(5)(a).

Petitioner might have had this defense had he placed his hands upon the throat of the victim and then not choked her.  But calmly telling the victim that you are going to kill her and then choking her until she is completely unconsciousness is plainly an act toward the killing of the victim beyond mere preparation.  It is too late to abandon an attempt to commit second degree murder after choking the victim until she became unconsciousness.[4]  As the court stated in Bush v. State, 526 So.2d 992 (Fla. 4th DCA 1988): "As the state contends, however, although voluntary abandonment of a crime may be a defense to an attempt, the mere fact that the crime attempted is not completed (here, that *the victim did not die while appellant was choking her*) is not a defense." 526 So.2d at 994 (emphasis added).  Here, as in Bush, the fact that the victim did not die was not a defense.  Thus, neither attorney error nor prejudice to the outcome has been shown.  Ground Three is without merit.

**Ground Four**

Petitioner asserts that  three to six hours after the offense was committed he gave statements to Thomas Moore and Robert Heilman.  Moore gave a statement that Petitioner admitted to him that he choked the victim until she lost consciousness and bladder control.  Doc. 7, App., pp. 25-26.  He said that Petitioner had called him because he had "gotten one of my CMA (Christian Motorcyclist Assoc.) cards at a Poker run a month or so before." *Id.*, p. 25.  Heilman said he was called by Moore to

---

[4] It is also an act that is imminently dangerous to another evincing a depraved mind regardless of human life.

accompany him to talk with Petitioner. *Id.*, p. 27.  Heilman said that Petitioner admitted choking the victim. *Id.*, p. 28.  Petitioner contends that this evidence should have been suppressed based upon a clergy-penitent privilege because Moore was a *de facto* "chaplain."  Doc. 1, p. 11.  He contends that had this evidence been suppressed before trial, he would not have entered his plea.  He argues that his attorney was ineffective as to this evidentiary matter.  Respondent concedes exhaustion of state court remedies as to this claim.

The trial court held that even if Moore was a clergyman, the conversation with Moore "enjoys no privilege" because it took place in the company of both the victim and Mr. Heilman.  Doc. 12, Ex. G, R. 70, citing Fernandez v. State, 730 So. 2d 277 (Fla. 1999).  In Fernandez, the court found that statements made to a clergyman were not privileged because made in the presence of the defendant's wife, children, his girlfriend, and her children.  730 So. 2d at 282.  This a correct application of normal rules of evidence.  It does not matter whether Heilman was an agent for the alleged clergyman, Moore.  The victim was present, and this destroyed any arguable privilege.

For these reasons, the state court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  Ground Four affords no relief.

## Conclusion

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Doyle Jay Kelly pursuant to 28 U.S.C. § 2254 challenging his conviction for aggravated battery in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 02-02514AF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on October 24, 2005.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.